**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| CURTIS THROWER, | : | Civil Action No. 07-3434 (FSH) |
| | : | |
| Plaintiff, | : | |
| | : | **O P I N I O N** |
| v. | : | |
| | : | |
| NEW JERSEY DEPT. | : | |
| OF CORRECTIONS, et al., | : | |
| | : | |
| Defendants. | : | |

---

**APPEARANCES:**

CURTIS THROWER, #189474, Plaintiff Pro Se
East Jersey State Prison
Rahway, New Jersey  07065

**Faith S. Hochberg, District Judge**

Plaintiff CURTIS THROWER (hereinafter "Plaintiff"), a prisoner currently confined at East Jersey State Prison, Rahway, New Jersey, seeks to bring this 42 U.S.C. § 1983 action in forma pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915. Plaintiff submitted for filing his complaint (hereinafter "Complaint").  Plaintiff also submitted his application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a).  This Court, therefore, will grant Plaintiff in forma pauperis status and will direct the Clerk to file Plaintiff's Complaint.

For the reasons stated below, this Court will dismiss certain Plaintiff's claims <u>sua</u> <u>sponte</u> for failure to state a claim upon which relief may be granted and will proceed Plaintiff's remaining claim to the next stage.

## <u>BACKGROUND</u>

Plaintiff asserts that, on June 18, 2007, prison officials directed Plaintiff to submit a urine sample,[1] but he was unable to produce a sample because the medications that Plaintiff was taking at the time caused urine retention.[2] <u>See</u> Compl. at 1. Plaintiff's inability to produce a sample was interpreted by the prison officials as Plaintiff's refusal to submit to testing and resulted in Plaintiff being charged with a violation[3] which, in turn,

---

[1] The Complaint does not clarify the reasons for the prison officials' request. The Court presumes that the prison officials were conducting routine random checks of the prison population for controlled substances, since such checks are usually performed through laboratory testing of urine samples.

[2] It appears that, had Plaintiff reported to the medical department at the place of Plaintiff's confinement that Plaintiff was suffering of urine retention, Plaintiff would be excused from the obligation to submit an urine sample. <u>See</u> Compl. at 1. Plaintiff, however, did not notify the medical department of his condition until he was directed to submit a sample. <u>See</u> <u>id.</u> Apparently, Plaintiff "didn't feel [he] needed to report [his medical condition] because[,] when [the medication] was prescribed to [Plaintiff, he] signed a document stating [that he] was informed of the side effects." <u>Id.</u> at 2.

[3] Plaintiff's Complaint designates the type of violation as "*259," without any elaboration. <u>See</u> Compl. at 1.

2

caused Plaintiff ninety days of segregated confinement.  See id. at 1-2.  The Complaint further alleges that, after Plaintiff learned about his upcoming placement in segregated confinement, he developed such fear and depression that he stopped eating, sleeping and taking his medications.  See id. at 3.  The prison officials qualified Plaintiff's actions as potentially suicidal and transferred Plaintiff to the psychiatric facility at Northern State Prison, where Plaintiff remained for five days being placed "in a cold cell . . . with nothing, no clothes, bedding, soap, or anything."  Id.  Upon his release from the psychiatric facility, Plaintiff was returned to his original place of confinement, where he resumed taking his medications, allegedly under the threat that his refusal to take medications would result in denial of early release.  See id. at 4.

## DISCUSSION

### A.   Standard of Review

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United

3

States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.

In determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions." Id.  Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

Although the Complaint provides four pages of a narrative detailing the above-summarized background facts, the Complaint neither specifies Plaintiff's claims nor outlines the remedies that

4

Plaintiff wishes to obtain.  See generally, Compl.  The vague terms used by Plaintiff could, however, be interpreted as indicating Plaintiff's belief that his rights were violated by (a) Plaintiff's placement in segregated confinement, (b) the conditions of the psychiatric facility and his loss of telephone privileges, (c) loss of good-time credits, (d) Plaintiff being forced to take medications that he no longer wishes to take, and (d) potential retaliatory actions of the prison officials which might cause him denial of early release in the future.  See generally, Compl.

Liberally construing the statements made in Plaintiff's Amended Complaint, see Haines, 404 U.S. at 520, the Court presumes that Plaintiff alleges violations of his rights under the First, Eighth and Fourteenth Amendments.


**B.   Eighth Amendment Claims**

Plaintiff has a protected right in being incarcerated at a place of confinement conforming to the standards set forth by the Eighth Amendment.   The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eight Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  In its prohibition of "cruel and unusual punishments, the Eighth Amendment

. . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  Rhodes, 452 U.S. at 346, 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

---

### 1.   Conditions of Confinement

Central to a conditions of confinement inquiry is the question of whether the conditions amount to a cruel and unusual punishment.[4]  The Supreme Court guided that

---

[4]

To establish that the conditions amount to cruel and unusual punishment under the Eighth Amendment, an inmate must allege both objective and subjective components.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation," Helling, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346), hence requiring that the deprivation sustained by a prisoner be "extreme deprivations." Hudson v. McMillian, 503 U.S. 1, 9 (1992). The subjective component requires that the state actor have acted with "deliberate indifference,"

A court must decide whether the [conditions of confinement] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination will turn on whether an alternative to which the [conditions of confinement] may rationally be connected is assignable to it. Thus, if a particular condition [of confinement] . . . is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment.

Bell v. Wolfish, 441 U.S. 520, 538-39 (1979).

The Bell Court further stated:

In determining whether conditions [of confinement] are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

Id. at 540 n.23 (internal quotations and citations omitted). The Court of Appeals has distilled the teachings of Bell into a two step process:

---

that is, with a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer, 511 U.S. at 835; Wilson, 501 U.S. at 303. In sum, an inmate may satisfy (1) the objective component by showing that he was deprived of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care and personal safety, Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), and (2) the subjective component by demonstrating that prison officials knew of such substandard conditions or treatment and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

7

> [The district court] must ask, first whether any
> legitimate purposes are served by these conditions, and
> second, whether the conditions are rationally related to
> these purposes.  In assessing whether the conditions are
> reasonably related to the assigned purposes, [the court]
> must further inquire as to whether these conditions cause
> inmates to endure such genuine privations and hardship
> over *an extended period of time*, that the adverse
> conditions become excessive in relation to the purposes
> assigned to them.   [The] inquiry into whether given
> conditions constitute punishment must therefore consider
> the totality of circumstances within the institution.

Hubbard v. Taylor, 399 F.3d 150, 159-60 (3d Cir. 2005) (internal

quotations and citations omitted, emphasis supplied); see also

Bell, 441 U.S. 520 (concluding that no violation was committed by

30-to-60-days confinement of two inmates in a cell designed for

one); Brookins v. Williams, 402 F. Supp. 2d 508 (D. Del. 2005)

(finding no constitutional violation where, over the period of five

days, an inmate was placed in a cell with two other inmates and

forced to eat near the toilet and not allowed to exercise); accord

Davidson v. Murray, 371 F. Supp. 2d 361 (W.D.N.Y. 2005) (where an

S.H.U. inmate alleged that, during sub-zero weather, adequate

clothing, footwear and blanket were refused to the inmate, while

the "yard" doors were left open, and missing windows were left

unrepaired, the inmate's Eighth Amendment claim was dismissed since

there was no allegation that defendants knew of an excessive risk

to the inmate's health); Geiger v. Price, 2003 U.S. Dist. LEXIS

12129 (N.D. Tex. July 16, 2003) (dismissing an inmate's claim that

the inmate had his constitutional rights violated when his

toiletries were removed from his cell, and he was stripped and then

left naked in the air conditioned cell for a period of three or four days).

    a.   PSYCHIATRIC FACILITY

    In the case at bar, Plaintiff's stay at the psychiatric facility was very brief, i.e., it was only five days long.  See Compl. at 3.  Moreover, it appears undisputed that Plaintiff was placed in the psychiatric facility by the prison officials because Plaintiff was placed on suicide watch.  See id.  Hence, the prison officials seemed to have a legitimate reason in removing Plaintiff's bed linens, clothing and toiletries, since these items could be used by a suicidal person to harm oneself, e.g., to attempt a self-hanging.  See, e.g., Cooper v. County of Washtenaw, 222 Fed. App. 459 (6th Cir. 2007) (a case ensuing from an inmate hanging himself with his shirt in the cell); Perez v. Oakland County, 466 F.3d 416 (6th Cir. 2006) (a case ensuing from an inmate who, after being put on suicide watch, hanged himself with a bed sheet that had been tied to the vent of his cell); Brewer v. City of Daphne, 111 F. Supp. 2d 1299 (S.D. Ala. 1999) (a case discussing various inmate suicides, including the ones that ensued from an inmate who hanged himself by his shirt and from asphyxia due to a small bar of soap self-lodged in an inmate's hypopharynx).  Since the actions of the prison officials appear to be clearly related to a legitimate penological interest and short-termed, Plaintiff's

9

allegations with respect to the conditions of confinement that existed in the psychiatric facility fail to state a claim upon which relief may be granted and will, therefore be dismissed.  See Bell, 441 U.S. at 538-39; Hubbard, 399 F.3d at 159-60.

      b.  CURRENT FACILITY

Plaintiff appears to challenge his current conditions of confinement asserting that his loss of "contact visits" is unconstitutional.  See Compl. at 2.  However, loss of privileges, in general, does not amount to infliction of cruel and unusual punishment; and loss of visitation and telephone privileges is no exception to this rule.  See Overton v. Bazzetta, 539 U.S. 126 (2003) (withdrawal of visitation privileges for at least two years was not a dramatic departure from accepted standards for conditions of confinement, nor did such regulation create inhumane prison conditions, or deprive the inmate of basic necessities); accord Cook v. Warden, FCI Fort Dix, 2005 U.S. Dist. LEXIS 33803 (D.N.J. Dec. 16, 2005) (finding forfeiture of telephone privileges proper for a violation of the prison code of conduct); Leon v. Schaaff, 2005 U.S. Dist. LEXIS 22462 (D.N.J. Sept. 23, 2005) (lost commissary and telephone privileges and placement in disciplinary confinement do not impose atypical and significant hardship upon an inmate).  In fact, it has been expressly established that the denial of contact visitation "simply does not amount to the

10

infliction of pain." <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1113 (9th Cir. 1986) (citing <u>Rhodes</u>, 452 U.S. 337, and <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1254-55 (9th Cir. 1982)(holding that idleness and lack of programs were not violations of the Eighth Amendment because they do not amount to infliction of pain)).  Indeed, visitation contacts do not qualify as minimal life's necessities, such as adequate food, clothing, shelter, sanitation, medical care and personal safety.

Therefore, the Court finds that Plaintiff's loss of visitation privileges did not violate his Eighth Amendment rights, and will dismiss Plaintiff's claims based on loss of visitation for failure to state a claim upon which relief may be granted.[5]

## 2.  Involuntary Medication

Plaintiff appears to allege that he is involuntarily consuming his medications.  <u>See</u> Compl. at 4.  In <u>White v. Napoleon</u>, 897 F.2d

---

[5]
Moreover, even if the Court to construe Plaintiff's claim based on loss of contact visitation as a First Amendment claim, such claim would be without merit.  It has been held that "incarcerated persons maintain no right to simple physical association . . . grounded in the First Amendment."  <u>Thorne v. Jones</u>, 765 F.2d 1270, 1274 (5th Cir. 1985), <u>cert. denied</u> 475 U.S. 1016 (1986).  The Supreme Court has stated that, "[t]he concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside the penal institution." <u>Jones v. North Carolina Prisoners' Labor Union</u>, 433 U.S. 119, 126 (1977).  While the denial of contact visitation may be harsh, "it is part of the penalty that criminals pay for their offenses against society." <u>Toussaint</u>, 801 F.2d at 1114 (citing <u>Rhodes</u>, 452 U.S. 337).

103 (3d Cir. 1990), the Court of Appeals observed that the right to stay free from unwarranted intrusion into one's body and "the related right to refuse unwanted medical treatment" are protected by the Constitution.  Id. at 111.  The Court in White held that convicted prisoners "retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives."  Id. at 113.  However, legitimate countervailing interest of the prison officials circumscribes the scope of the convicted prisoner's right to refuse unwanted medical treatment. See id.  Therefore, the Court of Appeals guided that "a prison may compel a prisoner to accept treatment when prison officials, in the exercise of professional judgment, deem it necessary to carry out *valid medical or penological objectives*."  Id. (emphasis supplied). Most importantly, the Court of Appeals ruled that "the judgment of prison authorities will be presumed valid *unless it is shown to be such a substantial departure from accepted professional judgment, practice or standards* as to demonstrate that the person responsible actually did not base the decision on such judgment."  Id. (citation omitted, emphasis supplied).

The reasoning of White is analogous to that of the United States Supreme Court's decision in Washington v. Harper, 494 U.S. 210 (1990).  In Harper, the plaintiff was a mentally ill inmate who had a history of engagement in violent conduct.  See 494 U.S. at 210.  The plaintiff was forced to take some antipsychotic

12

medication against his will in accordance with the prison policy. See id.  The Court in Harper held that a correct legal standard to determine constitutional validity of prison regulations which authorized non-consented treatment of a mentally ill inmate was whether such regulations were "reasonably related to legitimate penological interest."[6]  Id. at 223-224.

In the case at bar, Plaintiff's Complaint is silent as to (a) what type of medication Plaintiff is allegedly forced to take, and (b) what illness, if any, Plaintiff suffers from.  See generally, Compl.  Therefore, at the instant juncture, this Court cannot determine whether Plaintiff's alleged forced consumption of medication is rationally connected to a legitimate governmental interest and whether there are any viable alternatives to Plaintiff's non-consensual taking of medication.  Consequently, the Court finds sua sponte dismissal of Plaintiff's claim based on

---

[6]
    The Court in Harper noted three factors pertinent to determining whether non-consented treatment of an inmate was reasonably related to legitimate penological interest: (1) a valid rational connection must be established between the legitimate governmental interest and the prison practice to force an inmate to take medication; (2) a court should take into consideration "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (3) there should be absence of alternatives to non-consensual taking of medication which does not, however, mean that prison administration has to "set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint."  Id. at 224-225. (citations omitted).

involuntary consumption of medication unwarranted at the instant stage and proceeds this claim to the next stage.

## C.   **Fourteenth Amendment Claims**

### 1.   **Placement in Segregated Confinement**

Plaintiff complains about his placement in segregated confinement. <u>See</u> Compl. at 1-3. This Court liberally construes this allegation as a claim that imposition of the disciplinary sanction violated Plaintiff's Fourteenth Amendment right to due process of law.

A person is entitled to due process of law when government action deprives him or her of life, liberty, or property. <u>Greenholtz v. Inmates of Nebraska Penal and Correctional Complex</u>, 442 U.S. 1, 7 (1979). The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. IV. To analyze Plaintiff's due process claim, the first step is to decide whether he was deprived of a liberty or property interest protected by due process. <u>See</u> <u>Fuentes v. Shevin</u>, 407 U.S. 67 (1972). If not, it is not necessary to consider what process is due. <u>See</u> <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972). Thus, Plaintiff was entitled to due process only if he had a protected liberty interest in avoiding twelve days in solitary confinement.

14

Liberty interests protected by the Due Process Clause may arise under the Constitution itself or may be created by state statutes or regulations.  See Sandin v. Conner, 515 U.S. 472, 483-484 (1995).  But "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner."  Id. at 478.  "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976); see also Vitek v. Jones, 445 U.S. 480, 493 (1980). Convicted inmates like Plaintiff have no liberty interest arising by force of the Due Process Clause itself in avoiding segregated confinement.  See Hewitt v. Helms, 459 U.S. 460, 466-67 & n.4 (1983); Montanye, 427 U.S. at 242.  However, a State may also create a protected liberty interest by statute or regulation. Sandin, 515 U.S. at 483-84.  In Sandin, the United States Supreme Court announced a new standard for determining whether a state has created a liberty interest for convicted prisoners.  "The Court explained that mandatory language in a state law or regulation can create a protected liberty interest only if the alleged deprivation 'imposes atypical and significant hardship on the inmate in

15

relation to the ordinary incidents of prison life.'" <u>Torres</u>, 292 F.3d 141 at 151 (quoting <u>Sandin</u>, 515 U.S. 484).

Under <u>Sandin</u>, Plaintiff was entitled to due process of law only if his placement in segregated confinement imposed an "atypical and significant hardship" in relation to the ordinary incidents of prison life. <u>See Sandin</u>, 515 U.S. at 484. Spending twelve days in segregated confinement is not an atypical and significant hardship in relation to the ordinary incidents of prison life. "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." <u>Smith v. Mensinger</u>, 293 F.3d 641, 653 (3d Cir. 2002); <u>accord Sandin</u>, 515 U.S. at 486 (punitive segregation for 30 days is not an atypical and significant hardship); <u>Griffin v. Vaughn</u>, 112 F.3d 703 (3d Cir. 1997) (administrative segregation as a suspect for 15 months pending completion of an investigation of the rape and beating of a female corrections officer does not impose atypical and significant hardship); <u>see also Fraise v. Terhune</u>, 283 F.3d 506, 522-523 (3d Cir. 2002) (New Jersey prisoners have no protected liberty interest in being free of indefinite segregated confinement in Security Threat Group Management Unit).

Because Plaintiff had no protected liberty interest to avoid ninety days in segregated confinement, he had no Fourteenth

16

Amendment right to due process of law, which could have been violated by such confinement. This Court, therefore, is constrained to dismiss this claim for failure to state a claim upon which relief may be granted.

### 2.   Loss of Good-time Credits

While Plaintiff does not appear to allege that he was denied due process in the sense that he was not afforded a proper hearing, Plaintiff's Complaint appears to contain a challenge as to the outcome of that hearing, i.e., Plaintiff's allegations that his loss of 90 days of "good-time credits" (for the purposes of computation of Plaintiff's period of confinement) was unconstitutional. See Compl. at 2. However such allegations fail to state a cognizable due process claim since Plaintiff's argument is, effectively, limited to Plaintiff's disagreement with the outcome of the hearing.[7] See, e.g., Coades v. Kane, 1992 U.S. Dist. LEXIS 8844 (E.D. Pa. May 22, 1992) (an inmate was not denied due process merely because an unfavorable decision was reached by

---

[7]

If the Court is to construe Plaintiff's allegations with respect to his loss of "good-time credits" as a conditions of confinement claim," such claim would be without merit. See Castillo v. FBOP, 2006 U.S. Dist. LEXIS 42494 (D.N.J. June 23, 2006) (finding that loss of "good-time credits" does not state a conditions of confinement claim and relying, inter alia, on Sandin v. Conner, 515 U.S. 472, 483-484 (1995), and Rutledge v. AG of the United States, 163 Fed. App. 120 (3d Cir. 2006)).

a prison hearing examiner since an unfavorable decision <u>per se</u> is not the same as a denial of due process).

Moreover, and paramountly here, the exclusive federal remedy for an inmate challenging the length (or the very fact) of his confinement is a petition for a writ of habeas corpus which requires the exhaustion of state court remedies. <u>See</u> <u>Preiser v. Rodriquez</u>, 411 U.S. 475 (1973). "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." <u>Preiser</u>, 411 U.S. at 500; <u>see also</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 554 (1974); <u>Brown v. Fauver</u>, 819 F.2d 395 (3d Cir. 1987). Therefore, the Court cannot entertain Plaintiff's challenge to the loss of 90 days of "good-time credits" as part of Plaintiff's § 1983 civil rights action and will dismiss that challenge without prejudice for failure to state a claim upon which relief may be granted.[8]

─────────────────

[8]
To the extent that Plaintiff might seek declaratory and injunctive relief other than release factoring in 90 days of "good-time credits," Plaintiff's claims have not accrued because a favorable judgment would necessarily imply the invalidity of his underlying criminal conviction. <u>See</u> <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). Where success in a plaintiff's § 1983 damages action would implicitly question the validity of the term of his confinement (or the very fact of confinement), the plaintiff must first achieve favorable termination of his available state, or federal habeas, opportunities in order to obtain relief under § 1983 the underlying decision to confine him. <u>See</u> <u>Muhammad v. Close</u>, 540 U.S. 749, 751 (2004). Plaintiff's allegations in the instant Complaint do not indicate that his 90 days of "good-time credits" were restored by

D.    **First Amendment Claim**

The First Amendment offers protection for a wide variety of expressive activities. See U.S. Const. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

To prevail on a retaliation claim under 42 U.S.C. § 1983, Plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225); see also Carter v. McGrady, 292 F.3d 152, 157 (3d Cir. 2002).

In the case at bar, Plaintiff alleges that, when Plaintiff initially refused to take medications, a medical professional employed at the place of Plaintiff's confinement "came to [Plaintiff] and told [Plaintiff] that [the medical professional]

---

the state courts or by the issuance of a writ of habeas corpus. Therefore, Plaintiff's challenge to the outcome of the loss of good-time credits is not cognizable under § 1983 and dismissed without prejudice.

19

would personally see to it that [Plaintiff] necer received an early release" if Plaintiff refused to take prescribed medications. Compl. at 4.  While this Court may interpret Plaintiff's refusal to medication as a protected activity within the meaning of the First Amendment, Plaintiff's Complaint clearly indicates that Plaintiff suffered no adverse action, in view of the fact, at the instant juncture, that Plaintiff has neither been considered for nor denied early release.[9]

Since Plaintiff's retaliation claim is purely speculative, rather than based on actual facts, this claim will be dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

For the reasons set forth above, all Plaintiff's Fourteenth and First Amendment claims, as well as Plaintiff's Eighth Amendment claims based on Plaintiff's confinement at a psychiatric facility and current conditions of confinement will be DISMISSED, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.

---

[9]

Moreover, the Court has no reason to presume that Plaintiff is actually in danger of such retaliation, since it is highly unlikely that prison medical staff--rather than the state Parole Board-- would be in charge of Plaintiff's parole decisions.

Plaintiff's Eighth Amendment claim based on involuntary consumption of medications will PROCEED to the next stage.

An appropriate Order accompanies this Opinion.


                                    /s/ Faith S. Hochberg
                                  **United States District Judge**
Dated:  September 6, 2007


21